# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE WESLEY WELLS, | 1:08-CV-01818 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of guilty on July 7, 1992, to second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition ("Answer"), Exhibit B.  Petitioner was sentenced to serve an indeterminate term of eighteen years to life in state prison with the possibility of parole. Id.

On August 30, 2007, a subsequent parole suitability hearing was held before the

1

1  California Board of Parole Hearings ("BPH" or "Board") to determine Petitioner's eligibility for
2  parole. See Petition for Writ of Habeas Corpus ("Petition"), Exhibit A. Petitioner attended the
3  hearing and was represented by his attorney, Cheryl Montgomery. Id. At the conclusion of the
4  hearing, the BPH denied parole and deferred rehearing for one year. Id. at 128.
5        On December 17, 2007, Petitioner filed a petition for writ of habeas corpus in the Los
6  Angeles County Superior Court challenging the BPH's decision. See Answer, Exhibit A. On
7  April 16, 2008, the petition was denied in a reasoned decision. See Answer, Exhibit B. Petitioner
8  then filed a habeas petition in the California Court of Appeals, Second Appellate District, on
9  May 2, 2008. See Answer, Exhibit C. The petition was summarily denied on July 10, 2008. See
10 Answer, Exhibit D. On July 21, 2008, Petitioner filed a petition for review in the California
11 Supreme Court. See Answer, Exhibit E. On September 17, 2008, the petition was denied. See
12 Answer, Exhibit F.
13       On November 26, 2008, Petitioner filed the instant petition for writ of habeas corpus in
14 this Court. The petition for writ of habeas corpus challenges the 2007 decision of the BPH
15 denying parole. Petitioner contends there was no evidence supporting the finding of unsuitability
16 thereby violating his constitutional rights. He further argues there is no nexus between the
17 reasons for parole denial and Petitioner's current threat to public safety. On March 6, 2009,
18 Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on
19 March 26, 2009.

20                             **FACTUAL BACKGROUND**[1]

21       Petitioner and the victim, Cheryl Marino Wells (Petitioner's wife), were separated
22 pending divorce proceedings during the time of the crime. They had previously incurred
23 numerous separations and marital difficulties during their seven-year relationship. In fact, a
24 restraining order had been issued as a result of spousal abuse incidents.
25       On the day of the crime, the victim visited Petitioner at his home despite the restraining
26 order, as she had done in the past. The victim had brought their young son, Eric. At that time,

27 ───────────────
28    [1]The information is derived from the factual summary as set forth in the parole hearing proceedings. See Petition, Exhibit A at 11-14.

Petitioner and the victim began discussing the possibility of reconciliation and then made love. Petitioner recalled that soon thereafter, the subject of a fall concert came up. They had previously made tentative arrangements to attend the concert together; however, the victim informed Petitioner that she might now want to go to the concert with another man. Petitioner stated this resulted in a huge argument, and because he had been drinking, he obtained a .38-caliber revolver out of the linen closet and shot the victim. He stated he shot her twice, once in the abdomen and once in the chest, and she probably died instantly. He stated he had shot her in a service area of the house while their son was playing in the living room. Petitioner waited two hours, then drove the victim's body to an alley area and dumped it. The body was later discovered and Petitioner was arrested.

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

3

1    The instant petition is reviewed under the provisions of the Antiterrorism and Effective
2 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,
3 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
4 adjudication of the claim "resulted in a decision that was contrary to, or involved an
5 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
6 of the United States" or "resulted in a decision that was based on an unreasonable determination
7 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
8 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

9    As a threshold matter, this Court must "first decide what constitutes 'clearly established
10 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
11 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
12 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
13 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
14 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
15 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

16    Finally, this Court must consider whether the state court's decision was "contrary to, or
17 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
18 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
19 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
20 Court on a question of law or if the state court decides a case differently than [the] Court has on a
21 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
22 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
23 state court identifies the correct governing legal principle from [the] Court's decisions but
24 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
25 413.

26    "[A] federal court may not issue the writ simply because the court concludes in its
27 independent judgment that the relevant state court decision applied clearly established federal
28 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

4

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision and presume it adopted the reasoning of the Los Angeles County Superior Court, which was the last state court to issue a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied

parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record

6

also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) A record of violence and assaultive behavior; and 3) An unstable social history. See Petition, Exhibit A at 124-127.

First and foremost, the BPH relied heavily on the facts of the commitment offense.[2] The Board found that the offense was carried out in a very dispassionate and calculated manner. 15 Cal. Code Regs. § 2402(c)(1)(B). The Board noted that Petitioner armed himself even though he was not in any danger. The Board further noted that the victim had been shot in the back. Thus, there was some evidence supporting this finding. The Board also found that the victim's body had been defiled. 15 Cal. Code Regs. § 2402(c)(1)(C). In support of this finding, the Board stated the victim's body had been dumped in an alley where it was attacked by ants and insects. Next, the Board found Petitioner had committed the offense in a manner that demonstrates a callous disregard for human suffering. 15 Cal. Code Regs. § 2402(c)(1)(D). To support this finding, the Board noted the manner in which the victim had been shot. In reviewing the record, this Court finds no evidence to support the finding that the manner in which the victim was shot evinced a callous disregard for suffering. Nevertheless, the superior court did not rely on this factor to deny the petition. Finally, the Board determined that the motive for the killing was inexplicable, or at least very trivial. 15 Cal. Code Regs. § 2402(c)(1)(E). Petitioner and the victim apparently had

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

tentative plans to attend a concert together; however, the victim stated she was considering attending the concert with another man at which point Petitioner became angry, obtained a handgun, and shot and killed her. This evidence supports the Board's finding.

In sum, the superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

The BPH also noted Petitioner had a previous record of violence and unstable history of tumultuous relationships. These also are enumerated circumstances demonstrating unsuitability. 15 Cal. Code Regs. §§ 2402(c)(2), 2402(c)(3). In make these findings, the Board noted that Petitioner had a criminal history involving spousal and domestic abuse. Petitioner was arrested and convicted on previous occasions for making annoying phone calls and uttering threats, and for spousal abuse. The victim also documented repeated instances of physical, mental, and emotional abuse that Petitioner inflicted on her and her children. Id. In one incident, Petitioner had thrown the victim into a refrigerator, beat her head with his fists, beat her head into a coffee table, and threatened her with a bloody knife that if she didn't have an abortion he would beat the baby out of her. There was also documentation that Petitioner had previously slapped, beat and choked the victim and also his step-daughter. On one occasion, the victim noted, "On June 17, (1991), my husband advised me he was slowly killing me, and if I was not dead by the age of 30, I would be so disfigured, nobody else would want me." See Petition, Exhibit A at 99. On another occasion, the victim stated, "I'm so afraid for my life. My husband becomes very violent and vicious, especially when he's drinking. During his drinking periods, I'm the one to always receive his abuse, and my daughter. He's threatened to take my life, along with my children's lives, if I left him." Id. The victim stated she had sustained numerous injuries including a shoulder separation, fractured ribs, bite marks, bruises, cuts, black eyes, and excessive bleeding. In light of this evidence, the Board's conclusions under §§ 2402(c)(2) and 2402(c)(3) were certainly well-supported. The state court determination was not unreasonable.

The Board also considered the positive factors favoring parole release pursuant to §§ 2402(d)(3),(8), and (9). The Board noted that Petitioner had not received a single "chrono" for

misconduct since he had been incarcerated. The Board also commended Petitioner for the amount of programming he had done. In addition, the Board noted that the psychological report was favorable. Finally, the Board found that Petitioner's parole plans were viable and promising for a future grant of parole. Nevertheless, the Board found the negative factors outweighed the positive factors and determined that Petitioner remained an unreasonable risk of danger to the public. The state court finding that some evidence supported this determination was not unreasonable.

Petitioner argues that the Board's continuing reliance on the unchanging circumstances of the underlying offense violates his due process rights. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision. The Board found Petitioner's history of violence and unstable relationships to be highly relevant in concluding Petitioner would pose an unreasonable danger to public safety should he be presently released. Moreover, the concerns raised in Biggs are not present in this case.  Petitioner was sentenced to a minimum term of 18 years, and he began his life term on June 22, 1993. See Petition, Exhibit A at 1. At the time of the 2007 parole hearing, he had not yet served the minimum term of his sentence.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

  This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 29, 2009**           /s/ Sandra M. Snyder
               UNITED STATES MAGISTRATE JUDGE